DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JAMES MICHAEL TERRY, JR.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-2014

_____

October 15, 2025

Appeal from the Circuit Court for Hillsborough County; Peter Nicholas
Nazaretian, Judge.

Blair Allen, Public Defender, and Clark E. Green, Assistant Public
Defender, for Appellant.

PER CURIAM.

        Affirmed.

NORTHCUTT and KELLY, JJ., Concur.
MOE, J., Concurs with opinion.

MOE, Judge, Concurring.

        I concur with the decision to affirm.  I write separately to echo the

concerns recently articulated in *Ash v. State*, No. 1D2022-1163, 2025 WL

1573182, at *2 (Fla. 1st DCA June 4, 2025), and *Anderson v. State*, 50 Fla. L. Weekly D26, 2024 WL 5151749 (Fla. 1st DCA Dec. 18, 2024).

I agree with the First District's assessment that Florida's *Anders* process goes beyond what was required in *Anders v. California,* 386 U.S. 738 (1967).  Among other concerning aspects, our process in Florida "shifts the appellate court from the role of neutral arbiter to the role of advocate" and requires "appellate courts to abandon the principles fundamental to appellate review and close their eyes to jurisdictional limitations."  *Anderson*, 2024 WL 5151749, at *3-6.  As *Anderson* recognizes, district courts of appeal have jurisdiction to hear direct appeals, but "we cannot exercise our judicial power unless there is a 'controversy between the parties.' "  *Id.*

The First District concluded that the jurisdictional problem with Florida's *Anders* process was not compelled by *Anders v. California.*  I agree with this, too.  *Anders v. California* "effectively prohibited appellate courts from resolving direct criminal appeals without either a counseled brief or an independent court review of the record on appeal."  *Anderson*, 2024 WL 5151749, at *2-3.  *In re Anders Briefs*, 581 So. 2d 149 (Fla. 1991), and Florida Rule of Appellate Procedure 9.140(g)(2)(A) went beyond that, requiring appellate courts to "look beyond the issues raised by counsel," "review such briefs with the presumption that appointed counsel did not represent his client to the best of his ability," "independently raise issues not presented by a party," and then decide those same issues neutrally and objectively.  *Anderson*, 2024 WL 5151749, at *2-3.

Highlighting the importance of the jurisdictional issue raised in *Anderson*, neither *In re Anders Briefs* nor the rules opinion adopting rule 9.140(g)(2)(A) mention article V, section 4 of Florida's Constitution.  In

2

Florida, we do not generally read appellate opinions as having decided a question not mentioned in the opinion or as having construed the constitution *sub silentio*. *See, e.g., Pedroza v. State*, 291 So. 3d 541 (Fla. 2020) ("A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment.").

Article V, section 4 was ratified in the 1950s, before the United States Supreme Court's decision in *Anders,* the Florida Supreme Court's decision in *In re Anders Briefs,* and the 2016 adoption of Florida Rule of Appellate Procedure 9.140(g)(2). Simply looking at the dates, one wonders how the text of article V, section 4 could have been originally understood in the 1950s to grant district courts of appeal a form of judicial power that does not seem to have been acknowledged in Florida until 1991 when *In re Anders Briefs* was decided.

Evidence of public discussion surrounding the creation of Florida's district courts of appeal suggests that the ratifiers of article V, section 4 would not have understood that text to grant district courts of appeal a judge-as-advocate role. Evidence of public discussion reflects that ratifiers were "primarily concerned with the problems of delay and the circumstances related to and contributing to delay in the administration of justice." *See, e.g.*, Lawrence C. Porter, *The Status of Judicial Reform in the State of Florida,* 12 U. Mia. L. Rev. 104, 104 (1957). There is no obvious connection between (1) the idea, evidenced by public discussion at the time of ratification, that creating district courts of appeal would reduce delays in the court system and (2) the idea, quite possibly not evidenced *anywhere* until a supreme court opinion in 1991, that district courts of appeal have jurisdiction to raise and then decide issues that neither the defendant nor his or her counsel identified.

3

Under the fixed-meaning canon of construction, words are to be given the meaning they had when the text was adopted. Antonin Scalia & Bryan Garner, *Reading Law: Interpretation of Legal Texts* 78 (2012) (discussing the fixed-meaning canon). "Although courts routinely apply legal instruments to novel situations over time, their meaning remains fixed." *Id.* Whatever article V, section 4 was understood to mean at the time of ratification in the 1950s, it means the same thing today if that text was never amended.

Just as "new rights cannot be suddenly 'discovered' years later in a document," *id.* at 80, the fixed-meaning canon suggests that article V, section 4's meaning could not evolve with the times. As Thomas M. Cooley recognized, "[a] constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable." Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union* 54 (1868). Because the text of the constitution has a fixed meaning, neither the subsequent adoption of a rule of procedure nor a subsequent change to another part of article V would have altered the meaning of article V, section 4.

While Article III of the United States Constitution leaves to Congress the responsibility to create inferior courts and establish their jurisdiction, article V of the Florida Constitution itself specifies the organization of the state judicial branch, including the subject matter jurisdiction of each level of court. Article V of the Florida Constitution reflects a Floridian intent to constrain the exercise of judicial power in state courts in a way not reflected in Article III of the United States Constitution.

4

It seems reasonable to conclude that words in a constitution must be amended for the meaning of those words to change. In Florida, the supreme court's own precedent prior to ratification created an understanding of judicial power that required parties to a case to submit adverse positions to the court for a determination. *See, e.g., First Nat'l Bank of Miami v. Bebinger*, 128 So. 862, 863 (1930) (explaining that "[t]he words 'case' or 'cause,' when used as legal terms, are generally understood as meaning a judicial proceeding for the determination of a controversy between parties wherein rights are enforced or protected or wrongs are prevented or redressed" and concluding that the proper exercise of judicial power requires present or possible adverse parties contentions to be submitted to the court for consideration).

The First District recently certified the following question:

Does Florida Rule of Appellate Procedure 9.140(g)(2) and *In Re Anders Briefs*, 581 So. 2d 149 (Fla. 1991), continue to accord with the fundamental principles of appellate review in a manner sufficient to invoke the court's jurisdiction, and, if so, do they require appellate courts to depart from their roles as neutral arbiters?

*Ash*, 2025 WL 1573182, at *2. Until that question is resolved by our highest court, this is an area where further briefing would be beneficial.

_____

Opinion subject to revision prior to official publication.